## * * § 362 INFORMATION COVER SHEET * *

P.M. Jones Jr. & M.L. Jones

DEBTOR

Secured Creditor Mentaberrys

MOVANT

Case No: 13-50887-BTB

CHAPTER: 7

MOTION #:

### Certification of Attempt to Resolve the Matter Without Court Action:

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* 6/11/13     *Signature:* /s/Louis M. Bubala III

*Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: Washburn Creek Ranch, Humboldt County, N

NOTICE SERVED ON:  Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ✓ ;

DATE OF SERVICE: 6/11/13

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Property Taxes: @$10,000 | 1st DOT: Mentaberry, $900,000 (Sch. D) |
| 2nd DOT: Mentaberry, $965,000+ | 2nd |
| 3rd Judgment: Amadan Gold, $427,000+ | 3rd |
| 4th Judgment: Elafe LLC, $615,000+ | 4th |
| Other: | Other: |
| Total Encumbrances: $2,017,000+ | Total Encumbrances: |
| | |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| FRE 701 Lay Opinion: <$1,000,000.00 | Scheduled, $1,800,000.  Movants believes this also is FRE 701 Lay Opinion |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT . |
|---|---|
| Amount of Note: $900,000 | · None; implied disputed equity cushion. |
| Interest Rate: 6% | . |
| Duration: 11/14/2009-11/14/2014 | . |
| Payment per Month: $13,500 Quartlery | . |
| Date of Default: 8/14/2012 | . |
| Amount in Arrears: $486,000+ | . |
| Date of Notice of Default: 12/3/12, Rec'd | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| No insurance; damage and waste; water rights need to be protected | |
| SUBMITTED BY: /s/Louis M. Bubala III | SUBMITTED BY: |
| LOUIS M. BUBALA III | SIGNATURE: |

JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
ARMSTRONG TEASDALE LLP
50 West Liberty, Suite 950
Reno, NV 89501
Telephone: 775.322.7400
Facsimile: 775.322.9049
Email: jchubb@armstrongteasdale.com
  and   lbubala@armstrongteasdale.com

Attorneys for Eddie and Alice Jean Mentaberry,
and George B. Mentaberry and Tammy Pollock
as trustees of the George B. Mentaberry Trust
(Collectively, the "Mentaberrys")[1]

| Electronically Filed On |
| June 12, 2013 |

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

PAUL MARK JONES, JR. and MARY LYNN
JONES,

              Debtors.

Case No.:  BK-N-13-50887-BTB

Chapter:   7

**MOTION FOR RELIEF FROM
AUTOMATIC STAY**

Hearing Date:  OST Requested
Hearing Time:  OST Requested

## I.  INTRODUCTION

       The Mentaberrys move for relief to terminate the automatic stay so they may pursue their state law remedies to recover the real property commonly known as Washburn Creek Ranch near McDermitt, Nevada, which secures the debt owed to them by the Debtors.[2]

---

[1] George and Eddie Mentaberry are brothers.  Tracy Pollock is George Mentaberry's daughter. George Mentaberry died prepetition, but he is listed here since the recorded deed of trust lists him as one of the trustees of his self-named trust.  Mrs. Pollock is the executor of his estate.

[2] The Mentaberrys use the name "Washburn Creek Ranch," the name they always used for their ranch, to refer to the property securing their loan.  The property is more specifically identified by the legal description and assessor's parcel numbers on the deed of trust recorded in Humboldt County. **Exhibit 2**.  The ranch did not have a street address when the Mentaberrys owned it, but the Joneses use the addresses of 11255-65 Jordan Meadow Road.  Some papers refer to it as Jordan Meadow Drive.  Any disagreement over the address does not change, alter, or lessen the rights against the property identified by legal description in the deed of trust.

1

Cause exists to terminate the stay because the property is in disrepair, is being wasted, is not insured, and is at risk of losing water rights valuable to the Mentaberrys' historic, 2,800-acre ranch. Moreover, the Joneses did not use their own money to buy the ranch. They borrowed the down payment, defaulted, and are subject to a judgment recorded against the ranch. The Joneses financed the remaining purchase price with a note to the Mentaberrys. They stopped making interest-only payments in May 2012, failed to make the principal payment last fall, and filed for bankruptcy two days before the foreclosure. The Joneses did not fund the purchase of the ranch and they have lived on it for free for more than a year already. They should not be allowed to remain there any longer.

A Mentaberry family member who has repeatedly visited the ranch since the sale described progressive deterioration of the homes and land. He saw pigs living in the family's historic home. In George Mentaberry's house, he saw boxes and garbage stacked three-feet tall and carpet covered with food waste. The house smelled as if something died there. On the ranch, the Joneses have not irrigated or farmed it since the purchase. This creates potential problems for certificated water rights if they have not been put to beneficial use, as well as for an application for a well. The proof of beneficial use on the well is due July 15, 2013. The Mentaberrys intend to request an extension from the state, but there are additional risks since they do not own the ranch. The sooner the Court terminates the stay, the sooner the Mentaberrys can complete the foreclosure to prevent further damage to the residences and protect the ranch's water rights.

Although the Joneses filed a statement of intention to surrender the ranch, they will not consent to stay relief to permit foreclosure. They apparently believe there may be equity subject their homestead exemption. Their ideas are misplaced. The property value has declined as they committed waste, and the value will decrease if the ranch loses its water rights. There already are serious difficulties in selling a rural ranch, even in the best of times. Finally, the Trustee has no interest in administering the property because the ranch is subject to the Mentaberry's deed of trust and two recorded judgments. The Trustee also advised that it will be difficult to maintain the ranch because there are not funds in the estate and its remote location.

Taken individually or collectively, the above factors warrant termination of the automatic stay for the Mentaberrys to resume foreclosure and exercise their state law rights.

## II.  <u>FACTUAL HISTORY</u>

1.      George and Eddie Mentaberry's father acquired the Washburn Creek Ranch in 1917. Decls. of Alice Jean Mentaberry and John Mentaberry, filed contemporaneously.  The family lived and worked the ranch until they sold it to Paul and Lynn Jones in August 2009.  *Id.*  Eddie and Alice Jean Mentaberry continued to live in their house on the ranch, based on their agreement with the Joneses, until they bought a home and moved to Winnemucca in late 2010.  *Id.*

2.      The Joneses bought the ranch for $1.3 million.  The Mentaberrys receives a $400,000 down payment and a $900,000 note, secured by a deed of trust against the property. Decl. of Alice Jean Mentaberry at ¶ 5; **Ex. 1**, Note; **Ex. 2**, Deed of Trust.[3]

3.      The down payment was paid with funds from Amadan Gold LLC, not from the Joneses.  The Joneses defaulted, prompting Amadan to sue them.  Amadan obtained a judgment for $427,632.04 and recorded the judgment against the ranch on June 15, 2010.  **Ex. 3**, Judgment Lien. Counsel has not yet been able to obtain a copy of the complaint and motion for default judgment in Amadan's litigation against the Joneses.  Amadan's counsel in the litigation, Wayne Klomp, has confirmed that the judgment was for the funds paid for the Joneses to purchase the ranch.

4.      On the note, the Joneses agreed to make (1) quarterly interest-only payments in the amount of $13,500.00 beginning August 14, 2009, continuing until August 14, 2014, (2) a principal reduction payment of $450,000.00 on August 14, 2012, (3) additional interest-only payments, and (4) a final payoff of the remaining principal on August 14, 2014.  **Ex. 1**, Note; Decl. of Alice Jean Mentaberry & Ex. 1, Accounting Record.  The Joneses made eleven quarterly payments (although seven were one to 21 days late), but they have not made a payment since May 21, 2012 and did not make the $450,000 principal reduction payment due August 14, 2012.  Decl. of Alice Jean Mentaberry & Ex. 1, Accounting Record.

5.      Under the terms of the deed of trust, the Joneses agreed to properly care for and keep it in good condition, and to not commit or permit any waste.  **Ex. 2** at 3-4, ¶¶ 1 & 3.

---

[3] The note originally was in favor of Eddie and George Mentaberry, and they were the beneficiaries under the original deed of trust.  The note and deed of trust were later assigned to movants.  Affidavit of Authority Exercise to Exercise Power of Sale, attached as **Exhibit 5**, Notice of Default.

6.      The Joneses have not done so.  John Mentaberry, the son of George Mentaberry, has visited the ranch several times since the Joneses bought it.  Decl. of John Mentaberry at ¶¶ 2, 7. The ranch has three houses, one where his father's family (including Mr. Mentaberry) lived, another house where his uncle's family lived, and a third one where his grandfather lived from the 1920s until his death in the 1960s.  *Id.* at ¶ 12.  He has seen 15-20 pigs living in his grandfather's house since the Joneses bought the ranch.  *Id.* at ¶ 13.  The Joneses initially lived in Mr. Mentaberry's house but moved to his uncle's house in 2010 when his father's house became unlivable.  *Id.* at ¶ 12.  When Mr. Mentaberry toured his family's house on April 30, 2013, he saw boxes and garbage stacked three-feet tall through the house and found the carpet was covered in food waste.  *Id.* at ¶ 14.  He described the stench as if something had died inside the house.  *Id.*

7.      Outside the homes, Mr. Mentaberry described the property as looking worse than a public landfill.  *Id.* at ¶ 15.  The Joneses dug a pit where they have thrown their waste.  *Id.*  The wind has scattered bags, diapers, and other trash over an 80-acre fenced-in parcel next to the pit. *Id.*  Mr. Mentaberry also previously discovered that one of the Joneses' horses died on the road leading to the ranch.  *Id.* at ¶ 16.  Rather than remove the horse, the Joneses create a new road by driving around it until one of Mr. Mentaberry's friends moved the body.  *Id.*

8.      There is an urgent need to protect the water rights associated with the Washburn Creek Ranch.  Decl. of Alice Jean Mentaberry at ¶ 8.  There is a well on part of the ranch originally drilled in conjunction with the nearby Cordero Mine.  *Id.*  When the mine closed, the well was turned back over to the ranch.  *Id.*  In order to maintain the ranch's rights to use the well, the owners must file their proof of beneficial use or file a request for extension with the Nevada Division of Water Resources.  *Id.* at ¶ 9.  The deadline to do so is July 15, 2013.  *Id.; see* **Ex. 4**, Maps & Due Dates, Application # 58518.  There are other water rights that need to be protected with the ranch through use of the water and land, rights that are at risk since Joneses have not irrigated or farmed the ranch since they bought it.  Decl. of Alice Jean Mentaberry at ¶ 10; Decl. of John Mentaberry at ¶ 11.

9.      The deed of trust also requires the Joneses to insure the property for an amount at least equal to the total indebtedness owed on the Mentaberry note.  **Ex. 2** at 4, ¶3.

10.    The Joneses have not done so.  In April 2013, the Joneses' attorney in Winnemucca advised that they do not have insurance for the property.  Decl. of John M. Doyle, filed contemporaneously.  The Mentaberrys tried to purchase insurance to protect their collateral but were unable to acquire appropriate coverage since they do not own the property.  Decl. of Alice Jean Mentaberry at ¶ 12.  The Trustee also advised undersigned counsel that she is unable to insure the ranch, does not have estate funds to do so, and has not insured it.  The Joneses' current expenditures do not include any payments for property insurance, home maintenance, or any other insurance policies (Ct. Dkt. #1, Sch. J).

11.    A Trustee's Sale Guarantee issued on October 25, 2012, identifies numerous failures by the Joneses to pay property taxes dating back to 2011.  **Ex. 5**.  The total amount delinquent was $9,028.58.  The Mentaberrys paid one year's prior delinquent property taxes, but tax obligations continue to accrue.  *See* Decl. of Alice Jean Mentaberry at ¶ 11.

12.    On December 3, 2012, First American Title Insurance Company, as the trustee under the deed of trust, recorded a notice of default and election to sell, with outstanding debt of $918,135 as of October 23, 2012.  **Ex. 6**.

13.    On March 25, 2012, First American recorded the state Foreclosure Mediation Program's certificate permitting the beneficiary to proceed with the foreclosure.  **Ex. 7**.

14.    A notice of sale was recorded contemporaneously, setting the sale for May 8, 2013.  **Ex. 8**.  The estimated payoff was $965,000.  *Id.*

15.    The Joneses filed a Chapter 7 petition on May 6, 2013, listing the ranch as their residence (Ct. Dkt. #1; Ct. Dkt. #17, Am. Pet.).  They valued the ranch at $1.8 million and subject to a $900,000 secured claim from their home loan from George and Eddie Mentaberry (Ct. Dkt. #1, Schs. A & D).  The Mentaberry secured debt is not contingent, unliquidated or disputed (Ct. Dkt. #1, Sch. D).  The Joneses filed their Statement of Intention to surrender the property to George and Eddie Mentaberry (Ct. Dkt. #1, St. of Int.).  The Joneses claimed their homestead exemption valued at $550,000 (Ct. Dkt. #16, Sch. C).

16.    The Mentaberrys do not agree with the Joneses' valuation of the ranch at $1.8 million.  As noted above, the property sold less than four years ago for $1.3 million, and the

property has deteriorated during the Joneses' ownership.  Based on the Mentaberrys' status as the long-time former owners who maintain a security interest in the property, their personal familiarity of the residence and property, and the degradation of the property since it was sold to the Joneses, they do not believe the property is worth $1.3 million any longer.

17.     John Mentaberry, who grew up on the ranch and worked on it throughout his adult life, reached an agreement with the Joneses to buy it for $1.1 million in 2012.  Decl. of John Mentaberry at ¶¶ 3-5, 8.  The transaction was not completed after Mr. Mentaberry discovered undisclosed judgment liens against the property.  *Id.* at ¶ 8.  He believes that in the ranch's current condition, it will require a substantial investment to repair the houses, clear the fields to return them to production, work on the irrigation systems, and conduct the overall deferred maintenance and complete the repairs that have become necessary since his father and uncle sold the property.  *Id.* at ¶ 17.  Mr. Mentaberry now believes the ranch is worth less than $1 million.  *Id.*

18.     Although the Joneses did not schedule any other secured creditors (including amounts owed for property taxes), two judgments were recorded prepetition.  Amadan Gold LLC recorded a judgment for $427,632.04 on June 15, 2010.  **Exhibit 3**.  Elafe, LLC, and Commodis Corporation recorded a judgment for $520,500, plus additional statutory interest of $95,379.84, on February 14, 2013.  **Exhibit 9**.

19.     There is no evidence that the Joneses had or have the ability to make the payments necessary to maintain or protect the ranch.   Mr. Jones describes his occupation as "self employed/disabled," while Mrs. Jones says she is "self-employed/housewife" (Ct. Dkt. #1, Sch. I). They have two dependent, handicapped and autistic 22-year-old sons (Ct. Dkt. #1, Sch. I; Ct. Dkt. #16, Sch. B, ¶2).  Their monthly current income consists entirely of $2,200 from his "Social Security/Gov. Assist" benefits (Ct. Dkt. #1, Sch. I).  The Joneses also list other monthly income from "occasional sales of intellectual propert[y]," although they do not schedule any amount (Ct. Dkt. #1, Sch. I).  They vaguely describe their intellectual property as "intellectual technology" related to mining and "Paul's intellect," of unknown value that "can only be determine[d] as each customer purchase[s] it" (Ct. Dkt. #16, Sch. B, ¶22).

20.     The Joneses did not comply with the reporting requirements of their prior income

from employment or operation of businesses.  What they do report does not reflect any substantial income (Ct. Dkt. #1, SOFA ¶1).  The Joneses list $11,000 in gross business income year to date, and $31,000 in gross business income in 2012.  They fail to segregate their income by debtor or disclose their business income in 2011, both required under the directions of the SOFA.  They also disclose receipt of $15,000 this year from the sale of personal property and $30,000 last year from the sale of cattle (Ct. Dkt. #1, SOFA ¶2).  The other sources of income appear to be one-time sales, and there is nothing to suggest that the Joneses can engage in recurring sales of personal property of any meaningful value.

21.    The Joneses' current expenditures substantially exceed their monthly income of $2,200.  They scheduled monthly expenses of $4,925, without including any costs for their home mortgage, real estate taxes, property insurance, home maintenance, or any other insurance policies (Ct. Dkt. #1, Sch. J).   The Joneses effectively admit that they are not paying to insure the property or otherwise expending funds to maintain or protect it.

22.    Their petition and amended petition both declare this to be a no-asset case (Ct. Dkt. #s 1, 17).  It does not appear that there are any meaningful assets for the Chapter 7 Trustee to finance the administration of this property with insurance.

23.    The Trustee has advised that even if the Joneses' valuation of the ranch at $1.8 million was correct, she does not intend to administer the ranch because of the doubtful return for the estate.   The Mentaberrys' deed of trust, with additional legal fees incurred since the bankruptcy, is valued at approximately $1 million, about the same value John Mentaberry puts on the ranch.   Even if there were sufficient funds to pay off the Mentaberrys, the Joneses have claimed their homestead exemption and there are more than $1 million in judgment liens recorded against the property.

24.    The Trustee also advised that she does not have the resources to insure or maintain the ranch.  She further advised that she unable to obtain insurance for the ranch.  Even if she could insure the ranch, she has the additional difficulties in administering a vast ranch in rural Nevada, located approximately three hours away from her residence in Elko, with potentially troubling occupants in the Joneses.  As John Mentaberry attested, Mrs. Jones yelled at him and sheriff's

1   deputies when the deputies arrived to seize certain personal property, then threw an empty bucket

2   at them.  Decl. of John Mentaberry at ¶ 19.  Mr. Mentaberry also attested that he has seen the

3   Joneses' autistic sons—twenty-two years old, approximately six feet tall, and weighing more than

4   300 pounds each—act out violently without provocation.  *Id.* at ¶ 20.  It is not realistic to believe

5   that the Trustee could administer the ranch.

6                                          **III. ARGUMENT**

7           25.     Pursuant to Section 362(d)(1) of the Bankruptcy Code, the Court shall grant relief

8   from the automatic stay to a party in interest for cause, including the lack of adequate protection of

9   an interest in property.  The erosion, or threatened erosion, of a secured creditor's position "may be

10  shown through evidence of declining property values, the increasing amount of the secured debt

11  through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to

12  insure the property, failure to maintain the property, or other factors that may jeopardize the

13  creditor's present position."  *In re Anthem Cmties./RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo.

14  2001), *cited favorably by In re Bertran*, Case No. A12-00501-GS, 2012 WL 6093443, *1 n.8

15  (Bankr. D. Alaska Dec. 6, 2012).

16          26.     Cause exists to terminate the stay in this case either based on the independent issues

17  raised here or taken collectively in evaluating the lack of adequate protection.

18  **Failure to Insure**

19          27.     The absence of insurance on a creditor's collateral may be an absolute basis to

20  terminate the stay.  "Property insurance generally constitutes an indispensable protection and lack

21  of insurance jeopardizes a secured creditor's interests in its collateral."  *Delaney-Morin v. Day (In*

22  *re Delaney-Morin)*, 304 B.R. 365, 370 n.3 (BAP 9th Cir. 2003).  "A secured creditor lacks

23  adequate protection if there is a threat of a decline in the value of the property.  A threat to decline

24  includes failure to maintain property insurance."  *Id.* (citation omitted).  The BAP recently

25  reaffirmed the rationale of *Delaney* in an unpublished decision:  "A debtor's failure to insure

26  property can be a basis to grant a secured creditor relief from stay under § 362(d)(1) for lack of

27  adequate protection of its collateral."  *Palacios v. Upside Invs. LP (In re Palacios)*, Case No. CC-

28  12-1502-KiPaTa, 2013 WL 1615790, *7 (BAP 9th Cir. April 15, 2013) (mem. per curiam).

28.     The Joneses do not have insurance on the ranch, and neither the Mentaberrys nor the Trustee can obtain the necessary insurance.  The ranch is in dire need of protection since the Joneses have and are wasting the property.  The absence of insurance is an independent ground to terminate the automatic stay for cause.  Even if the Joneses get insurance for the property, substantial grounds still exist to terminate the stay.

**Failure to Pay Property Taxes**

29.     Failure to make postpetition payments, by itself, can constitute cause to terminate the stay.  *Delaney-Morin*, 304 B.R. at 369, *citing Ellis v. Parr (In re Ellis)*, 60 B.R. 432 (BAP 9th Cir. 1985).  The concern that arises with unpaid property taxes is that the taxes are paid prior to other liens, thereby reducing payments to other secured creditors.  *In re Steve Cavanaugh L.P.*, Case No. 08-61002-11, 2009 WL 1525992, *12 (Bankr. D. Mont. June 1, 2009).   If a debtor does not have the resources to make postpetition payments, stay relief is warranted.  *See Dunn v. Rund (In re Dunn)*, Case No. CC-09-1176-MkMoPa, 2010 WL 6451888, *10 (BAP 9th Cir. Feb. 4, 2010) (mem. per curiam; Markell, J., on panel).

30.     Although this may be a relatively recent bankruptcy filing, all the evidence points to the fact that postpetition property taxes will not be paid.  The Joneses failed to make prepetition property taxes payments dating back two years.  **Ex. 5**, TSG.  They have not allocated any funds to make postpetition property tax payments (Ct. Dkt. #1, Sch. J).  These postpetition payments should be made by the Joneses if they believe they the property should be administered and sold, rather than have the stay terminated to complete the foreclosure.  But the Joneses do not have the resources to pay property taxes given that their expenses are already more than double their income (Ct. Dkt. #1, Sch. J).  The estate also does not have the resources for the Trustee to pay the property taxes.

31.     The property taxes warrant, or at least support, relief from the automatic stay.

**Failure to Protect Water Rights**

32.     The risk from the loss of water right, and the appurtenant problem of devaluation of the collateral securing the debt, provides cause that supports relief from the automatic stay.  *See JE Livestock, Inc. v. Wells Fargo Bank, N.A. (In re JE Livestock, Inc.)*, 375 B.R. 892, 896 (BAP 10th

9

Cir. 2007) (noting ruling below by bankruptcy court).

33.    As discussed above, the Joneses must file a proof of beneficial use or request an extension by July 15, 2013, to protect the rights associated with a well on the ranch.  They also have failed to irrigate or farm the ranch since they acquired it.  All of this creates risks that could result in the loss of the ranch's water rights.  Although the Mentaberrys intend to take steps to try to preserve the ranch's water, the matter is complicated by the fact that they do not currently own the ranch.  The Joneses' bankruptcy further complicated matters by staying the foreclosure.  The Mentaberrys seek stay relief so they can complete the foreclosure and provided a level of certainty that the new owner will preserve the water rights.

**Lack of Adequate Protection**

34.    The Joneses cannot show there is adequate protection.  There is no equity cushion, and there is no insurance as discussed above.

35.    The Joneses' schedules claim a purported equity cushion of $900,000, based on the claimed value of $1.8 million and secured debt of $900,000 (Ct. Dkt. #1, Schs. A & D).[4]  It is unclear what the Joneses rely upon for their valuation other than their own opinion of value as the owners under Federal Rule of Evidence 701.  If their opinion is the basis to admit their testimony on value, "the owner may merely give his opinion based on his personal familiarity of the property. … [T]he average debtor-homeowner who testifies in opposition to a motion for relief … should be limited to giving his opinion as to the value of his home, but should not be allowed to testify concerning what others have told him concerning the value of his or comparable properties unless the debtor truly qualifies as an expert."  Hon. Barry Russell, *Bankruptcy Evidence Manual* § 701:2 (2008).

36.    It is unclear why the Joneses value the property at $1.8 million when they only paid $1.3 million less than four years ago.  The prior sales price of the property is a starting point for valuation, but the price must be modified to reflect subsequent developments.  *Cf. In re Old*

---

[4] The property actually is subject to more than $1 million in additional unscheduled but recorded judgment liens, bringing the total secured debt in excess of $1.9 million—more than the Joneses' own value of the property.  To the extent the judgment liens can be avoided, the Joneses have not moved to do so and the judgment liens remain in place.

*Colony, LLC*, 476 B.R. 1, 12 (Bankr. D. Mass. 2012) (discussing appraiser's review of prior sale of same property). In this case, the Joneses have done nothing but neglect the property since they bought it, and real estate prices have declined during that same period. Yet rather than decrease the property value from their $1.3-million purchase price, the Joneses claim on their schedules that it has increased by $500,000 to $1.8 million.

37. The Joneses' testimony may be admissible, but their self-serving valuation should be given little or no weight in determining the value of the property because it cannot be supported or represent an "actual belief … derived from the evidence." *In re Meeks*, 349 B.R. 19, 22 (Bankr. E.D. Cal. 2006), *cited by Bankruptcy Evidence Manual* § 701:2, Ex. 2. Even an owner's uncontradicted testimony as to value is not necessarily sufficient to carry the debtor's burden if the testimony is not credible to prove the claimed value of the property. *Bankruptcy Evidence Manual* § 701:2, Ex. 3 (citing cases).

38. In contrast, the Mentaberrys' opinion is that the property value has decreased in value. John Mentaberry values the ranch at worth less than $1 million.

39. The Mentaberrys' opinion as to value also is admissible under Federal Rule of Evidence 701. The rule "provides that a lay witness may provide opinion testimony so long as it is: '(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *David Hill Dev., LLC v. City of Forest Grove*, 688 F. Supp.2d 1193, 1210 (D. Ore. 2010) (emphasis added). The Mentaberrys satisfy this standard as long-time former owners still secured by the property.

40. Rule 701 does not limit the admissibility of lay testimony of that of current owners. Former owners may testify as to value if they are personally familiar with the property and its value. *See, e.g., Welsh v. Newman Int'l Transport, Inc.*, Case No. 2:10-cv-582-FtM-SPC, 2011 WL 5570800, **2-4 (M.D. Fla. Nov. 16, 2011) (citing cases); *Tokles & Son, Inc. v. Midwest Indem. Co.*, 605 N.E.2d 936, 941 (Ohio 1992). To be sure, Rule 701 simply requires testimony based on personal familiarity, without reference to whether the witnesses ever owned the property.

41.     In this case, the equity cushion started at $400,000 when the Joneses borrowed money for the down payment to buy the ranch.  The cushion has decreased since then because

a.  The payoff amount just before the scheduled foreclosure grew to an estimated $965,000 due to additional interest, fees and costs arising from the Joneses' default. **Ex. 8**, Notice of Sale.  The amount has increased since then with the filing of the bankruptcy, engagement of bankruptcy counsel, and accruing interest.

b.  Neglect of the property.

c.  Decline in real estate values.

d.  Unpaid property taxes.

e.  Foreclosure costs.  *See, e.g., In re Pitts*, 2. B.R. 476, 478 (Bankr. C.D. Cal. 1979).

42.     Taken collectively, the only conclusion is that any equity cushion has rapidly eroded over the past four years, leaving the Mentaberrys without adequate protection.

**Intent to Surrender**

43.     If a debtor files a statement of intent to surrender, but does not do so, the secured creditor's remedy is to seek stay relief.  *Mayton v. Sears, Roebuck & Co. (In re Mayton)*, 208 B.R. 61, 66 (BAP 9th Cir. 1997); *In re Donnell*, 234 B.R. 567, 574 (Bankr. D.N.H. 1999).

44.     The Joneses elected to surrender the property under 11 U.S.C. § 521(a)(2)(A) (Ct. Dkt. #1, PDF Page 30).  The last day to amend the statement or move for an order for additional time to alter the statement is the same date for the required filing of the statement of intent, that is, 30 days after the date of the petition.  11 U.S.C. § 521(a)(2)(A); Fed. R. Bankr. P. 1009(b); *In re Steinhaus*, 349 B.R. 694, 702 n.14 (Bankr. D. Idaho 2006) (disagreeing with out-of-circuit decision allowing debtor to amend or seek leave for additional time within longer period to perform under Section 521(a)(2)(B)).

45.     The Joneses filed their petition on May 6, 2013, and the 30th day after that was June 5, 2013.  Therefore, the Joneses no longer have the right to amend their statement of intent and they must surrender the ranch.

46.     The Mentaberrys are cognizant that the deadline to surrender has not passed yet under 11 U.S.C. § 521(a)(2)(B) (30 days after first scheduled date of creditors meeting; meeting set

12

for June 27, 2013, so July 27, 2013 is the deadline to surrender).  The Mentaberrys also recognize that once the deadline to surrender occurs, Section 521 does not itself provide for stay relief.

47.    What is clear, though, is that the Joneses oppose stay relief now.  It strongly suggests that notwithstanding their non-revocable statement of intent to surrender, they intend to stay at the ranch as long as they possibly can without adequate protection provided to the Mentaberrys.  It also is clear that the Mentaberrys will have to seek stay relief sooner or later.  They are proceeding now because of the risks to the property.  Ultimately, the fact that the Joneses filed their intent to surrender is simply another factor that supports an immediate grant of stay relief.

## IV. CONCLUSION

The Mentaberrys seek stay relief to complete the foreclosure on their family's historic ranch. The Joneses have abused and neglected the property, including its water rights, and the continued possession of the ranch puts the Mentaberrys' collateral at risk.  Worse, the Joneses do not have insurance on the ranch.  Neither the Trustee nor the Mentaberrys are able to acquire appropriate insurance to protect the ranch.  The Joneses filed their statement to intent to surrender the property, and the Court should grant the Mentaberrys' motion so they can proceed to recover the ranch.

Dated this 11th day of June, 2013      ARMSTRONG TEASDALE LLP

By: /s/Louis M. Bubala III
JANET L. CHUBB, ESQ.
LOUIS M. BUBALA III, ESQ.

Attorneys for Eddie and Alice Jean Mentaberry,
and George B. Mentaberry and Tammy Pollock
as trustees of the George B. Mentaberry Trust

13

# EXHIBIT 1

# EXHIBIT 1

No. 121-2384473

PROMISSORY NOTE

$900,000.00                    Reno, Nevada, *August 12*, 2009.

     FOR VALUE RECEIVED, the undersigned promise to pay to the order of EDDIE MENTABERRY, a married man, as to an undivided 50% interest, and GEORGE MENTABERRY, an unmarried man, as to an undivided 50% interest, the sum of NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($900,000.00), together with interest upon declining balances thereof at the rate of Six Percent (6%) per annum, commencing on *August 14*, 2009, and it is hereby agreed that the said $900,000.00, plus 6% interest, shall be paid as follows:

     Interest only, payable in quarterly installments. The first quarterly installment of interest shall be due on *November 14*, 2009, and continue thereafter on the same day of each succeeding ~~month~~ until *August 14, 2014*, 2014, at which time the then remaining principal balance, plus accrued interest, shall be paid in full.

     In addition to the interest payments called for above, a principal reduction payment in the sum of $450,000.00, shall be due on *August 14*, 2012.

Any payment, including the final payment, made more than fifteen (15) days after its due date shall be accompanied by a late charge in the amount of 1% of the payment then due.

If all or any portion of the property which secures this note is conveyed by makers by deed, contract, execution, instrument, or any other mode or means, voluntarily or involuntarily, not caused by the demise of makers, which will effect, in law or equity, a divestiture of makers' interest or title in said property, then and in that event this note shall accelerate and the entire balance of principal and interest, including guaranteed interest, then unpaid, plus any prepayment penalties, shall forthwith become due and payable without notice or demand.

 

_____          _____
Paul Jones                                    Mary Lynn Jones

Page 1 of 2 pages.

Makers reserve the right to prepay all or any portion of the indebtedness evidenced by this note at any time, without penalty. Any sums prepaid shall first be applied to accrued interest on the principal balance then unpaid.

If default be made in the provisions hereof, or be made in any of the covenants contained in the Deed of Trust securing this note or be made in the payment of any installment as provided in any other note secured by said Deed of Trust; or in the event any maker executes a general assignment for the benefit of creditors, or a bankruptcy proceeding is commenced by or against any maker; or in the event a receiver is appointed for any maker or the property of any maker, then, upon the happening of any one of such events, the entire sum of principal and interest, including guaranteed interest, then unpaid, plus any prepayment penalties, shall forthwith become due and payable, at the option of the holders, without notice or demand.

The holders shall not by any act of omission or commission be deemed to waive any rights or remedies hereunder unless such waiver be in a writing signed by the holders, and then only to the extent set forth therein.

Each maker agrees to pay all costs and expenses incurred in enforcing collection of any portion of this note by suit or otherwise, including a reasonable attorney's fee, if an attorney is used in such collection. If suit is instituted for collection, the Court shall adjudge the attorney's fee allowed.

This note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers. Such liability shall continue in the event any extension of time for repayment is given.

This note is secured by a Deed of Trust of even date herewith.

_____    _____
Paul Jones                          Mary Lynn Jones

Page 2 of 2 pages.

LAW OFFICES OF JUDITH A. OTTO, LTD. ♦ 1610 MONTCLAIR AVENUE, SUITE B ♦ RENO, NEVADA 89509

# EXHIBIT 2

# EXHIBIT 2

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER
PAID $23.00          FIRST AMERICAN

08/14/2009 02:45:50PM
PAGE 1 OF 7

2009  3523

A. P. Nos: 003-091-02 & 03;
          003-101-03, 04, 05; 06
          07, 08 & 09;
          003-111-12, 16, 17 & 19;
          003-201-02

Escrow No. 121-2384473

When recorded mail to:

Mary Adeney
P.O. Box 348
McDermitt, NV 89421

### AFFIRMATION PURSUANT TO
### NRS 111.312(1)(2) AND 239B.030(4)

        X     Pursuant to NRS 239B.030, the undersigned, hereby
affirm(s) that the below document, including any exhibits,
hereby submitted for recording does not contain the social
security number of any person or persons.

-OR-

        The undersigned, hereby affirm(s) that this
document, including any exhibits, hereby submitted for
recording does contain the social security number of a person
or persons as required by the following: _____.

Signature _____

Print Signature _____

Agent _____

Title _____

### DEED OF TRUST
### WITH ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made August 11, 2009,

between PAUL M. JONES and MARY LYNN JONES, husband and wife,

herein called "Trustor", whose address is: P.O. Box 415

McDermitt, NV 89421 , FIRST AMERICAN TITLE

INSURANCE COMPANY, a California corporation, herein called

LAW OFFICES OF JUDITH A. OTTO, LTD. ♦ 1610 MONTCLAIR AVENUE, SUITE B ♦ RENO, NEVADA 89509

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 2 OF 7

2009 3523

"Trustee", and EDDIE MENTABERRY, a married man, as to an

undivided 50% interest, whose address is: _____

_____; and GEORGE MENTABERRY, an

unmarried man, as to an undivided 50% interest, whose address

is: _____, herein

called "Beneficiary", whose address is: _____

_____.

## W I T N E S S E T H:

That Trustor irrevocably grants to Trustee in trust,

with power of sale, all interest of Trustor in that certain

property situate in the County of Humboldt, State of Nevada,

more particularly described as follows:

TOWNSHIP 46 NORTH, RANGE 36 EAST, M.D.B.&M.,

SECTION 6:   S 1/2 SE 1/4
SECTION 7:   ALL
SECTION 18:   LOT 1; N 1/4 NE 1/4; NE 1/4 NW 1/4
TOWNSHIP 47 NORTH, RANGE 35 EAST, M.D.B.&M.

SECTION 3:   LOT 3 OF THE NW 1/4
SECTION 19:   E 1/2 NE 1/4

TOWNSHIP 47 NORTH, RANGE 36 EAST, M.D.B.&M.

SECTION 23:   SE 1/4 SE 1/4
SECTION 24:   NE 1/4 SW 1/4; SW 1/4 SW 1/4; N 1/2 SE 1/4
SECTION 26:   S 1/2 NW 1/4; NW 1/4 NE 1/4
SECTION 27:   NE 1/4 SE 1/4; SW 1/4 SE 1/4
SECTION 34:   NE 1/4 NW 1/4

TOWNSHIP 47 NORTH, RANGE 37 EAST, M.D.B.&M.

SECTION 10:   N 1/2 N 1/2
SECTION 11:   NW 1/4 NW 1/4
SECTION 14:   NW 1/4 SW 1/4; SW 1/4 NW 1/4

-2-

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 3 OF 7

2009 3523

```
SECTION 15:  S 1/2 NE 1/4; S 1/2 NW 1/4; N 1/2 SW 1/4;
             N 1/2 SE 1/4;
SECTION 16:  N 1/2 SE 1/4; SW 1/4 SE 1/4; SE 1/4 SW 1/4;
             SW 1/4 NE 1/4; SE 1/4 NE 1/4
SECTION 19:  S 1/2 NE 1/4; NW 1/4 SE 1/4; NE 1/4 SW 1/4;
             LOT 3 OF THE SW1/4
SECTION 20:  SW 1/4 NE 1/4; SE 1/4 NE 1/4; NE 1/4 SW
             1/4; NW 1/4 SE 1/4; S 1/2 NW 1/4
SECTION 24:  NE 1/4; E 1/2 NW 1/4
```

TOGETHER WITH, the tenements, hereditaments and
appurtenances thereunto belonging or appertaining, and the
reversion and reversions, remainder and remainders, rents,
issues and profits thereof, subject, however, to the right of
Beneficiary, during any period of default hereunder, and
without waiver of such default, to collect said rents, issues
and profits by any lawful means, and to apply the same, less
costs and expenses of collection, to any indebtedness secured
hereby.

FOR THE PURPOSE OF SECURING: (1) Payment of the
principal sum of $900,000.00, according to the terms of a
promissory note or notes of even date herewith made by
Trustor, payable to order of Beneficiary, and all extensions
or renewals thereof; (2) the performance of each agreement of
Trustor incorporated herein by reference or contained herein;
and (3) payment of such additional sums which may hereafter
be loaned to Trustor by Beneficiary when evidenced by a
promissory note or notes reciting that they are secured by
this Deed of Trust.

AND THIS INDENTURE FURTHER WITNESSETH:

1.    Trustor agrees to properly care for and keep said
property in good condition and repair; not to alter, remove,
damage or demolish any building or improvement thereon; to
complete in a good and workmanlike manner any building or
improvement which may be constructed thereon, and to pay when
due all claims for labor performed and materials furnished
therefor; to comply with all laws, ordinances and regulations
relating to any alterations or improvements made thereon; not
to commit or permit any waste thereof; not to commit, suffer
or permit any act to be done in or upon said property in
violation of any law, covenant, condition or restriction
affecting said property; to cultivate, irrigate, fertilize,
fumigate, prune and/or do any other act or acts, all in a
timely and proper manner, which, from the character or use of

-3-

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 4 OF 7



2009 3523

said property, may be reasonably necessary, the specific enumerations herein not excluding the general.

2.  Trustor agrees to pay and discharge all costs, fees and expenses of this trust incurred in connection with any default by Trustor.

3.  During the continuance of this trust, Trustor covenants to keep all buildings that may now or at any time be on said property in good repair and insured against loss by fire, with extended coverage endorsement, in a company or companies authorized to issue such insurance in the State of Nevada.  Said insurance shall be in such sum or sums as shall equal the total indebtedness secured by this Deed of Trust and all obligations having priority over this Deed of Trust, or the maximum full insurable value of such buildings, whichever is less.  Said insurance shall be payable to Beneficiary to the amount of the unsatisfied obligation to Beneficiary hereby secured.  The policy or policies of said insurance shall be delivered to Beneficiary or to the collection agent of Beneficiary, as further security, and in default thereof, Beneficiary may procure such insurance and/or make such repairs, and expend for either of such purposes such sum or sums as Beneficiary shall deem necessary.  The amount collected by Beneficiary under any fire or other insurance policy may be applied by Beneficiary upon the indebtedness secured hereby and in such order as Beneficiary may determine, or, at the option of Beneficiary, the entire amount so collected, or any part thereof, may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

4.  Trustor promises and agrees that if, during the existence of this trust, there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, he will appear in and defend any such matter purporting to affect the security and will pay all costs and damages arising because of such action.

5.  Any award of damages in connection with any condemnation for public use of, or injury to said property, or any part thereof, is hereby assigned and shall be paid to Beneficiary, who may apply or release such moneys received by him in the same manner and with the same affect as herein provided for disposition of proceeds of insurance.

-4-

LAW OFFICES OF JUDITH A. OTTO, LTD. ♦ 1610 MONTCLAIR AVENUE, SUITE B ♦ RENO, NEVADA 89509

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 5 OF 7

2009   3523

6.    Except as may be required by law, Trustee shall be under no obligation to notify any party hereto of any pending sale of said property, whether such sale is by foreclosure or otherwise, or of any action or proceeding in which Trustor or Beneficiary or Trustee shall be a party, unless brought by Trustee.

7.    By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment, when due, of all other sums so secured or to declare default, as herein provided, for failure so to pay.

8.    At any time, and from time to time, without liability therefor, upon written request of Trustor and Beneficiary, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon said property, Trustee may consent in writing to the making of any map or plat thereof or join in granting any easement thereon.

9.    Upon receipt of written request from Beneficiary reciting that all sums secured hereby have been paid and upon surrender of this Deed of Trust and the note secured hereby to Trustee for cancellation and retention, or such other disposition as Trustee, in its sole discretion, may choose, and upon payment of its fees, the Trustee shall reconvey, without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters of fact shall be conclusive proof of the truth thereof.  The Grantee in such reconveyance may be described in general terms as "the person or persons legally entitled thereto".

10.   Should Trustor default in the payment of any indebtedness secured hereby, or in the performance of any of the covenants and agreements herein contained or incorporated herein by reference, Beneficiary may declare all sums secured hereby immediately due and payable.

11.   The following covenants Nos. 1, 3, 4 (interest 12%), 5, 6, 7 (counsel fees - a reasonable percentage), 8 and 9 of Nevada Revised Statutes 107.030, are hereby adopted and made a part of this Deed of Trust, and, notwithstanding any provision of said covenant No. 7 to the contrary, proceeds of any foreclosure sale shall be distributed pursuant to the provisions of Nevada Revised Statutes 40.462.

LAW OFFICES OF JUDITH A. OTTO, LTD. ✦ 1610 MONTCLAIR AVENUE, SUITE B ✦ RENO, NEVADA 89509

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 6 OF 7

2009 3523

12.   Trustor agrees to pay any deficiency arising from any cause after application of the proceeds of the sale held in accordance with the provisions of the covenants hereinabove adopted by reference.

13.   This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns.   It is expressly agreed that the Trust created hereby is irrevocable by Trustor.

14.   Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law, reserving, however, unto the Trustee, the right to resign from the duties and obligations imposed herein whenever Trustee, in its sole discretion, deems such resignation to be in the best interest of the Trustee. Written notice of such resignation shall be given to Trustor and Beneficiary.

15.   In this Deed of Trust, unless the context requires otherwise, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.   The term "Beneficiary" includes any future holder of the note secured hereby.   The term "Trustor" includes the term "Grantor".

16.   If all or any portion of the property which is the subject of this Deed of Trust is conveyed from Trustor by deed, contract, execution, instrument or any other mode or means, voluntarily or involuntarily, not caused by the demise of Trustor, which will effect, in law or equity, a divestiture of Trustor's interest or title in said property, the note secured hereby shall accelerate and the entire balance of principal and interest, including guaranteed interest, then unpaid, plus any prepayment penalties, shall forthwith become due and payable without notice or demand.

TRUSTOR:

_____          _____
Paul Jones                        Mary Lynn Jones

-6-

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

08/14/2009 02:45:50PM
PAGE 7 OF 7

**2009  3523**

STATE OF *Nevada* )
) ss
COUNTY OF *Humboldt* )

This instrument was acknowledged before me on
*August 12.*_____, 2009, by PAUL JONES and MARY LYNN JONES.

_____
Notary Public

W. D. BERNARD
Notary Public - State of Nevada
Appointment Recorded in Carson City
No: 08-8411-3 - Expires October 10, 2012

-7-

# EXHIBIT 3

# EXHIBIT 3

HUMBOLDT COUNTY, NEVADA                06/15/2010 11:34:43AM
MARY ANN HAMMOND, RECORDER                     PAGE 1 OF 6
PAID $19.00        AMADAN GOLD LLC

**2010 3637**

# COVER SHEET

Assessor's Parcel Number

003-091-02; 003-091-03; 003-101-03 thru 09;
003-111-12; 003-111-16; 003-111-17; 003-111-19;
003-201-02;

*Recording
Requested By:* Amadan Gold LLC, a Nevada limited liability company

*Return Document To:*

Name ___Jones Vargas, Attn: Wayne Klomp_____

Address ___100 W. Liberty St., 12th Fl._____

City/State/Zip ___Reno, NV 89501_____

*Mail Tax Statements To:*

Name _____

Address _____

City/State/Zip _____

### DEFAULT JUDGMENT

Title of Document                    ,

The undersigned does hereby affirm that the attached Default Judgment does not contain the social security number of any person.

Wayne O. Klomp, Esq.

This page added to provide additional information required by NRS 111.312 Sections 1-2.
(Additional recording fee applies.) This cover page must be typed or printed.

1   CASE NO.  CV18,209

2   DEPT. NO.  1

FILED

2010 MAY 17 PH 3: 21

TA......E SFERO
DIST. COURT CLERK

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND , RECORDER

06/15/2010 11:34:43AM
2010 3637
PAGE 2 OF 6

6   IN THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

7   IN AND FOR THE COUNTY OF HUMBOLDT

9   AMADAN GOLD LLC, a Nevada limited
10  liability company,

11              Plaintiff,

    vs.

12                                          **DEFAULT JUDGMENT**

13  PAUL MARK JONES and MARY LYNN P.
    JONES, individually and as husband and wife,

14

15              Defendants.

JONES VARGAS
100 West Liberty Street - Twelfth Floor
PO Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000  Fax: (775) 786-1177

16          An application having been duly made by Plaintiff, AMADAN GOLD LLC, for Judgment

17  against Defendants, PAUL MARK JONES and MARY LYNN P. JONES, jointly and severally,

18  and the default of Defendants having been entered for failure to answer or otherwise defend as to

19  the Complaint of Plaintiff, and it appearing that Defendants are not in the military service of the

20  United States and are not infants or incompetent persons, and good cause appearing, therefore,

21          **IT IS ORDERED** that Plaintiff recover of and from Defendants, and each of them, as

22  follows:

23          The principal amount of $400,000.00 as evident from the Promissory Note; pre-judgment

24  and post-judgment interest accruing at the contractual rate of 8 percent per annum for the amount

26  ///

27  ///

28  ///

Page 1 of 3

1  due totaling $24,172.04 through April 30, 2010 and accruing at a rate of $2,666.67 per month

2  thereafter; costs and attorneys' fees in the amount of $3,460.00.  Total damages are $427,632.04

3  plus accruing interest as set forth herein.

4      Dated this 17 day of May , 2010.

5

6                                                      _Richard A. Wagner_
                                                       DISTRICT COURT JUDGE
7

8  Submitted by:

9  JONES VARGAS

10

11  _Wayne Klomp_
    JOHN P. DESMOND
12  State Bar No. 5618
    WAYNE KLOMP
13  State Bar No. 10109
    100 W. Liberty St, 12th Floor
14  P.O. Box 281
    Reno, NV 89504-0281
15  Telephone: (775) 786-5000
    Facsimile: (775) 786-1177
16

17  *Attorneys for Plaintiff*
    *Amadan Gold LLC*

18

19

20

21

22

23

24

25

26

27

28

JONES VARGAS
100 West Liberty Street - Twelfth Floor
PO Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000  Fax: (775) 786-1177

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

06/15/2010 11:34:43AM
2010 3637  PAGE 3 OF 6

CERTIFIED COPY

The document to which this certificate is
attached is a full, true and correct copy of
the original on file and of record in my office.
DATE: 5-13-2010
Tami Rae Spero, County Clerk and Clerk
of the Sixth Judicial District Court, in and for
The County of Humboldt, State of Nevada.
By _____, Deputy
Per NRS 239 Sec. 6 the SSN may be redacted, but in
no way affects the legality of the document.

## CERTIFICATE OF SERVICE

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to NRCP 5 (b), I am serving a true and correct copy of the attached DEFAULT JUDGMENT on the party(s) set forth below by:

    X          Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices

               Certified Mail, Return Receipt Requested

               Via Facsimile (Fax)

               Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered

               Federal Express (or other overnight delivery)

addressed as follows:

Paul M. Jones
Mary Lynn P. Jones
Washburn Creek Ranch
1 Jordan Meadows Road
McDermitt, NV 89421

Paul M. Jones
Mary Lynn P. Jones
P. O. Box 415
McDermitt, NV 89421

DATED this _13th_ day of May, 2010.

_An employee of JONES VARGAS_

JONES VARGAS
100 West Liberty Street - Twelfth Floor
PO Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

HUMBOLDT COUNTY, NEVADA
MARY ANN HAMMOND, RECORDER

06/15/2010 11:34:43AM
PAGE 4 OF 6
2010 3637

CASE NO.  CV18,209

DEPT. NO.  1

IN THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF HUMBOLDT

AMADAN GOLD LLC, a Nevada limited liability company,

        Plaintiff,

vs.

PAUL MARK JONES and MARY LYNN P. JONES, individually and as husband and wife,

        Defendants.

**AFFIDAVIT OF JUDGMENT CREDITOR AS REQUIRED UNDER NRS 17.150**

STATE OF NEVADA    )
                  )ss.
COUNTY OF WASHOE    )

    I, MICHELL L. NOBACH, do hereby swear under penalty of perjury that the assertions of this Affidavit are true.

    1.    I am over the age of 21 years and the allegations contained herein are true and correct to the best of my information and belief.

    2.    With the exception of those matters stated upon information and belief, I have personal knowledge of each of the matters stated herein and could testify competently to the same under oath in a court of law if called upon to do so.

    3.    I am informed and believe that the date of birth for Paul Mark Jones is 7/25/45.

    4.    I am informed and believe that the date of birth for Mary Jones is 5/20/52.

    5.    I am informed and believe that the address for the Judgment Debtors is one or both of the following:

1  Paul M. Jones
2  Mary Lynn P. Jones
   Washburn Creek Ranch
3  1 Jordan Meadows Road
   McDermitt, NV 89421
4
5  or
6  Paul M. Jones
   Mary Lynn P. Jones
7  P. O. Box 415
   McDermitt, NV  89421
8
9  6.    I am informed and believe that the Judgment Creditor has been using the above

10  addresses for service of documents and the information has not been returned by the United States

11  Postal Service.

12  7.    Other than the information stated in this Affidavit, Judgment Creditor does not

13  have any further information as required by NRS 17.150 with regard to the Judgment Debtors.

14  **AFFIRMATION**
    **(Pursuant to NRS 239B.030)**

15  The undersigned does hereby affirm that this document does not contain the social security

16  number of any person.

17  DATED this _10th_ day of June, 2010.

18
19
20  Michell L. Nobach
21
22  SUBSCRIBED and SWORN hereto
    before me this _10th_ day of June, 2010.
23
24  Cheryl F. Byrne
    Notary Public
25
26  
    CHERYL F. BYRNE
    Notary Public - State of Nevada
    Appointment Recorded in Washoe County
    No: 05-95790-2 - Expires March 29, 2013
27
28

JONES VARGAS
100 West Liberty Street - Twelfth Floor
PO Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

Page 2 of 2

# EXHIBIT 4

# EXHIBIT 4

# Maps and Due Dates

**Application:** 58518  |  **Status: PERMIT**  |  **Certificate: None**  |  Start new search

### Due Dates

| | | | | | |
|---|---|---|---|---|---|
| **Filing Date:** | 02/03/1993 | **Priority Date:** | 12/02/1982 | **Return Date:** | 03/02/1993 |
| **Sent for Publication:** | 05/20/1993 | **Last Publication:** | 06/25/1993 | **Ready for Action:** | 07/25/1993 |
| **Permit Date:** | 06/15/2006 | **Withdrawn Date:** | | **Forfeit Date:** | |
| **Cancel Portion:** | | **Cancellation Date:** | | **Cancellation Rescind:** | |
| **Denied Date:** | | | | | |

### Maps

| | Filed Under: | Date: | | Filed Under: | Date: |
|---|---|---|---|---|---|
| **Proposed POD:** | 58518 | 04/29/1993 | **Existing POD:** | | |
| **Proposed POU:** | | | **Existing POU:** | | |

### Proofs of Completion and Beneficial Use

| | Due Date: | Received: | Filed: | Extension Due: | Extension Received: |
|---|---|---|---|---|---|
| **POC:** | 07/15/2011 | | 07/05/2011 | Y | |
| **PBU:** | 07/15/2013 | | | Y | |

### Other Dates and Requirements

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Cultural Map Due:** | Y | **Received:** | | **Filed Under:** | | **Certificate Date:** | |
| **Forfeiture Due Date:** | | **Extension Required:** | | **Forfeiture Portion:** | | **Forfeiture Filed:** | **Forfeiture Filed:** |
| **Temporary Expiration Date:** | | **Other Date:** | | **Reporting Required:** | | | |
| **Remarks:** | | | | | | | |

# EXHIBIT 5

# EXHIBIT 5

# *First American Title Insurance Company*

# GUARANTEE

## SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1.  Except to the extent that specific assurances are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

    **(a)** Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.

    **(b)** (1)  Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2)  Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.

    **(c)** (1)  Unpatented mining claims;  (2)  reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (3)  water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.

2.  Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

    **(a)** Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A), (C) or in Part 2 of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

    **(b)** Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1)  which are created, suffered, assumed or agreed to by one or more of the Assureds; (2)  which result in no loss to the Assured; or (3)  which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.

    **(c)** The identity of any party shown or referred to in Schedule A.

    **(d)** The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

First American Title Insurance Company

Dennis J. Gilmore
President

Timothy Kemp
Secretary

Countersigned by:

_____
Authorized Signatory

## GUARANTEE CONDITIONS AND STIPULATIONS

1.  **Definition of Terms.**

    The following terms when used in the Guarantee mean:
    (a)    the "Assured":  the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.
    (b)    "land":  the land described or referred to in Schedule (A)(C) or in Part 2, and improvements affixed thereto which by law constitute real property.  The tem "land" does not include any property beyond the lines of the area described or referred to in Schedule (A)(C) or in Part 2, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
    (c)    "mortgage":  mortgage, deed of trust, trust deed, or other security instrument.
    (d)    "public records":  records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
    (e)    "date":  the effective date.

2.  **Notice of Claim to be Given by Assured Claimant.**

    An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee.  If prompt notice shall not be give to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3.  **No Duty to Defend or Prosecute.**

    The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4.  **Company's Option to defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.**

    Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
    (a)    The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured.  The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee.  If the Company shall exercise its rights under this paragraph, it shall do so diligently.
    (b)    If the company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or

expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

(c)     Whenever the company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

(d)     In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such Assured for this purpose.  Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the  Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assure.  If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5.     **Proof of Loss or Damage.**

In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage.  The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.  If the Company is prejudiced by the failure of the Assured to provided the required proof of loss or damage, the Company's obligation to such Assured under the Guarantee shall terminate.  In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized reprsentative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage.  Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage.  All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6.     **Options to Pay or Otherwise Settle Claims: Termination of Liability.**

In case of a claim under this Guarantee, the Company shall have the following additional options:

(a)     To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.

The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by said mortgage or said lien for the

amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.

Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder.  In the event after notice of claim has been given to the Company by the Assured the company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price.

Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.

(b)    To Payor Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.

To payor otherwise settle with other parties for or in the name of an Assured claimant any claim assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4.

7.    **Determination and Extent of Liability.**

This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the exclusions From Coverage of This Guarantee.

The liability of the Company under this Guarantee to the Assured shall not exceed the least of:

(a)    the amount of liability stated in Schedule A or in Part 2;

(b)    the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or

(c)    the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance assured against by this Guarantee.

8.    **Limitation of Liability.**

(a)    If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)    In the event of any litigation by the Company or with the company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.

(c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

9. **Reduction of Liability or Termination of Liability.**

All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

10. **Payment of Loss.**

(a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

11. **Subrogation Upon Payment or Settlement.**

Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

12. **Arbitration.**

Unless prohibited by applicable law, either the Company or the Assured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision or other obligation. All arbitrable matters when the Amount of Liability is $1,000,000 or less shall be arbitrated at the option of either the Company or the assured. All arbitrable matters when the amount of liability is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. The Rules in effect at Date of Guarantee shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permits a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

13. **Liability Limited to This Guarantee; Guarantee Entire Contract.**

(a)     This Guarantee together with all endorsements if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the company.  In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

(b)     Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

(c)     No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

14.     **Notices, Where Sent.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at 1 First American Way, Santa Ana, California 92707.

Form No. 1282 (Rev. 12/15/95)

**TRUSTEE'S SALE GUARANTEE**

| | | | |
|---|---|---|---|
| Liability: | $900,000.00 | Order no.: | NCS-573405-HHLV-TSG |
| Fee: | $TBD | TS Number: | 2435818 |
| | | LA Number: | NCS-573405-HHLV |

## First American Title Insurance Company

a Corporation, herein called the Company,

### GUARANTEES

**First American Title Insurance Company, as Trustee
George B. Mentaberry and Tammy Pollock, or any successor Trustee, as Trustees of the
George B. Mentaberry Trust, dated July 19, 2010, as to an undivided 50% interest; and Eddie
Mentaberry and Alice Jean Mentaberry, husband and wife as joint tenants with the right of
survivorship, as to an undivided 50% interest, as Beneficiary**

herein called the Assured, against loss not exceeding the liability amount stated above which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby give that, according to the public records, on the date stated below,

1. The title to the estate of interest in the land covered by this guarantee is vested in the vestee named, subject to the matters shown as Exceptions herein, which Exceptions are not necessarily shown in the order of their priority.

2. The names and addresses of persons who have recorded requests for, or are entitled to receive a copy of, the notice of default and a copy of the notice of sale, including the Trustors, as provided by section 107.080, subsection 3, and section 107.090, of the Nevada Revised Statutes are as shown herein; and

3. The land is located in the township stated herein, and if designated, the newspaper or newspapers listed herein qualify for publication of notice pursuant to section 238.030 of the Nevada Revised Statutes.

All subject, however, to the exclusions from coverage, the limits of liability and the other provisions of the conditions and stipulations hereto annexed and made a part of this guarantee.

Date:  October 25, 2012 at 7:30 A.M.

*First American Title Insurance Company*

By:  Gary L. Kermott, President

Title to the estate or interest covered by this guarantee at the date hereof is vested in:

Paul M. Jones and Mary Lynn Jones, husband and wife as joint tenants with right of survivorship

The estate or interest in the land described or covered by this guarantee is:

Fee Simple

Exceptions:

1.    Water rights, claims or title to water, whether or not shown by the public records.

2.    Any taxes that may be due, but not assessed, for new construction which can be assessed on the unsecured property rolls, in the office of the County Assessor, per Nevada Revised Statute 361.260.

3.    The lien of deferred taxes due upon conversion of use of said land from agricultural to a higher use, as the same is defined and provided for in NRS 361A.010, et.seq.

      A document entitled "Notice of Attachment of an Open Tax Lien On Agriculture Real Property In Humboldt County" recorded April 10, 2012 as 2012 1975 of Official Records.

4.    Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $118.12, including penalties to October 31, 2012.
      APN  003-091-02

      (Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

5.    Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $21.83, including penalties to October 31, 2012.
      APN  003-091-03

      (Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

6.    Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $25.57, including penalties to October 31, 2012.
      APN  003-101-03

      (Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

7.      Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $50.83, including penalties to October 31, 2012.
APN  003-101-04

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

8.      Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $17.04, including penalties to October 31, 2012.
APN  003-101-05

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

9.      Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $17.36, including penalties to October 31, 2012.
APN  003-101-06

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

10.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $25.57, including penalties to October 31, 2012.
APN  003-101-07

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

11.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $19.06, including penalties to October 31, 2012.
APN  003-101-08

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

12.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $17.04, including penalties to October 31, 2012.
APN  003-101-09

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

13.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $110.63, including penalties to October 31, 2012.
APN  003-111-12

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

14.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $126.02, including penalties to October 31, 2012.
APN  003-111-16

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

15.     Taxes for the fiscal year July 1, 2012 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $4,413.19, including penalties to October 31, 2012.
APN  003-111-17

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

16.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $44.19, including penalties to October 31, 2012.
APN  003-111-19

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

17.     Taxes for the fiscal year July 1, 2011 through June 30, 2013 , including any District assessments collected therewith which are delinquent in the amount of $107.02, including penalties to October 31, 2012.
APN  003-201-02

(Prior to close of escrow exact payoff figures of the above must be obtained directly from the County Treasurer's Office. )

18.    Those taxes for the fiscal year July 1, 2012 through June 30, 2013, including any secured personal property taxes collected by the County Treasurer.

APN  003-111-17

| | | | |
|---|---|---|---|
| **1st installment** | $ | **981.11** | **Delinquent** |
| **2nd installment** | $ | **978.00** | **Delinquent** |
| | | | |
| **3rd installment** | $ | **978.00** | |
| **4th installment** | $ | **978.00** | |
| | | | |
| **Total** | $ | **3,915.11** | |

**<u>NOTE</u>:**

Said taxes become a lien on July 1, 2012 , each installment will become due and payable on the following dates:

1st installment is due on the 3rd Monday of August, 2012.
2nd installment is due on the 1st Monday of October, 2012.
3rd installment is due on the 1st Monday of January, 2013.
4th installment is due on the 1st Monday of March, 2013..

Each installment will become delinquent ten (10) days after due.

19.    Existing rights in use in favor of the public or third parties for highways, roads, railroads, pipelines, telephones, telegraphs and electrical transmission lines, canals, laterals and drains.

20.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

21.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded March 18, 1902, in Book 38, Page 31 of Deed Records.

22.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded September 9, 1915, in Book 50, Page 394 of Deed Records, as Instrument No. 35606.

23.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded September 9, 1915, in Book 50, Page 394 of Deed Records, as Instrument No. 35607.

24.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded April 21, 1920, in Book 54, Page 182 of Deed Records, as Instrument No. 45788.

25.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded December 2, 1920, in Book 54, Page 356 of Deed Records, as Instrument No. 46327.

26.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded December 2, 1920, in Book 54, Page 357 of Deed Records, as Instrument No. 46328.

27.    Reservations and provisions as contained in the Patent from the State of Nevada, recorded June 26, 1925, in Book 56, Page 118 of Deed Records, as Instrument No. 49799.

28.     Reservations and provisions as contained in the Patent from the State of Nevada, recorded April 2, 1942, in Book 63, Page 141 of Deed Records, as Instrument No. 69581.

29.     Reservations and provisions as contained in the Patent from the State of Nevada, recorded April 23, 1942, in Book 63, Page 174 of Deed Records, as Instrument No. 69655.

30.     Reservations and provisions as contained in the Patent from the State of Nevada, recorded April 23, 1942, in Book 63, Page 178 of Deed Records, as Instrument No. 69659.

31.     Reservations and provisions as contained in Patent from the United States of America, recorded March 25, 1963, in Book 74, Page 570 of Deed Records, as Instrument No. 114046.

32.     Reservations and provisions as contained in Patent from the United States of America, recorded August 5, 1966, in Book 17, Page 422 of Official Records, as Instrument No. 124698.

33.     Reservations and provisions as contained in Patent from the United States of America, recorded February 13, 1970, in Book 44, Page 186 of Official Records, as Instrument No. 140528.

34.     An easement for State Route 619 and incidental purposes in the document recorded September 26, 1957 in Book 71, Page 245 as Instrument No. 102552 of Official Records.

        (Affects Section 16, T47N, R37E)

35.     An easement for fence and incidental purposes in the document recorded December 11, 1967 in Book 27, Page 299 as Instrument No. 130609 of Official Records.

        (Affects Sections 24 and 26, T47N, R36E)

36.     An easement for underground water pipeline and incidental purposes in the document recorded September 2, 1969 in Book 39, Page 593 as Instrument No. 137965 of Official Records.

        (Affects Section 18, T46N, R36E)

37.     An easement for barbed wire fence and incidental purposes in the document recorded September 2, 1969 in Book 39, Page 594 as Instrument No. 137966 of Official Records.

        (Affects Section 24, T47N, R36E)

38.     An easement for Fence and incidental purposes in the document recorded March 13, 1991 in Book 299, Page 99 as Instrument No. 323737 of Official Records.

39.     Reservations and provisions as contained in Patent from the United States of America or the State of Nevada, Patent No. 9024.

        A certified copy of said Patent should be secured and recorded. This exception will be modified to reflect specific reservations and provisions contained in the recorded Patent prior to the close of escrow.

40.     Reservations and provisions as contained in Patent from the United States of America or the State of Nevada, Patent No. 9317.

NCS-573405-HHLV                                                    **12**

A certified copy of said Patent should be secured and recorded. This exception will be modified to reflect specific reservations and provisions contained in the recorded Patent prior to the close of escrow.

41.    Reservations and provisions as contained in Patent from the United States of America or the State of Nevada, Patent No. 9318.

A certified copy of said Patent should be secured and recorded. This exception will be modified to reflect specific reservations and provisions contained in the recorded Patent prior to the close of escrow.

42.    A Deed of Trust to secure an original indebtedness of $900,000.00 recorded August 14, 2009 as Instrument No. 2009 3523 of Official Records.

| | |
|---|---|
| Dated: | August 11, 2009 |
| Trustor: | Paul M. Jones and Mary Lynn Jones, husband and wife |
| Trustee: | First American Title Insurance Company, a California corporation |
| Beneficiary: | Eddie Mentaberry, a married man, as to an undivided 50% interest and George Mentaberry, an unmarried man, as to an undivided 50% interest |

According to the public records, George B. Mentaberry, an unmarried man as to an undivided 50% interest of the beneficial interest under the deed of trust was assigned to George G. Mentaberry and Tammy Pollock, or any successor Trustee, as Trustees of the George B. Mentaberry Trust, dated July 19, 2010 by assignment recorded August 12, 2010 as Instrument No. 2010 4548 of Official Records.

According to the public records, Eddie Mentaberry, a married man, as to an undivided 50% interest of the beneficial interest under the deed of trust was assigned to Eddie Mentaberry and Alice Jean Mentaberry, husband and wife as joint tenants with the right of survivorship by assignment recorded August 3, 2011 as Instrument No. 2011 4015 of Official Records.

A notice of default recorded _____, 2012 as _____ of Official Records.

43.    A declaration of homestead executed by Paul M. Jones and Mary Lynn Jones, recorded October 14, 2009 as Instrument No. 2009 4425 of Official Records.

(Affects Sections 19 and 20, T47N, R37E)

44.    A certified copy of a judgment or an abstract thereof, recorded June 15, 2010 as Instrument No. 2010 3637 of Official Records.

| | |
|---|---|
| Court: | In The Sixth Judicial District Court of the State of Nevada in and for the County of Humboldt |
| Case No.: | CV18,209 |
| Debtor: | Paul Mark Jones and Mary Lynn P. Jones, individually and as huband and wife |
| Creditor: | Amadan Gold LLC, a Nevada limited liability company |
| Amount: | $427,632.04, and any other amounts due thereunder. |

45.    A document entitled "Trustee Certificate" recorded June 5, 2012 as Instrument No. 2012 2755 of Official Records.

46.    Lack of actual vehicular access to and from the land, whether or not based upon a legal right.

47.    This item has been intentionally deleted.

48.    Rights of parties in possession.

* * * * * * * * * *

The land referred to in this guarantee is situated in the State of Nevada, County of Humboldt , and is described as follows:

TOWNSHIP 46 NORTH, RANGE 36 EAST, M.D.B.&M.

SECTION 6: S1/2 SE1/4
SECTION 7: ALL
SECTION 18: LOT 1; N1/2 NE1/4; NE1/4 NW1/4

TOWNSHIP 47 NORTH, RANGE 35 EAST, M.D.B.&M.

SECTION 3: LOT 3 OF THE NW1/4
SECTION 19: E1/2 NE1/4

TOWNSHIP 47 NORTH, RANGE 36 EAST, M.D.B.&M.

SECTION 23: SE1/4 SE1/4
SECTION 24: NE1/4 SW1/4; SW1/4 SW1/4; N1/2 SE1/4
SECTION 26: S1/2 NW1/4; NW1/4 NE1/4
SECTION 27: NE1/4 SE1/4; SW1/4 SE1/4
SECTION 34: NE1/4 NW1/4

TOWNSHIP 47 NORTH, RANGE 37 EAST, M.D.B.&M.

SECTION 10: N1/2 N1/2
SECTION 11: NW1/4 NW1/4
SECTION 14: NW1/4 SW1/4; SW1/4 NW1/4
SECTION 15: S1/2 NE1/4; S1/2 NW1/4; N1/2 SW1/4; N1/2 SE1/4
SECTION 16: N1/2 SE1/4; SW1/4 SE1/4; SE1/4 SW1/4; SW1/4 NE1/4; SE1/4 NE1/4
SECTION 19: S1/2 NE1/4; NW1/4 SE1/4; NE1/4 SW1/4; LOT 3 OF THE SW1/4
SECTION 20: SW1/4 NE1/4; SE1/4 NE1/4; NE1/4 SW1/4; NW1/4 SE1/4; S1/2 NW1/4
SECTION 24: NE1/4; E1/2 NW1/4

* * * * * * * * *

## INFORMATION FOR TRUSTEE

Order No.:  NCS-573405-HHLV- TSG
TS Number:  2435818
LA Number:  NCS-573405-HHLV

1.      County in which said land is located:   Humboldt
         If not in a city, judicial district in which said land is located:

2.      Newspapers in which legal publication may be made:

         Humboldt Sun--Published Monday through Friday
         1022 S. Grass Valley Road
         Winnemucca, NV  89445

3.      The names and addresses of persons who have recorded requests for, or are entitled to receive a
         copy of, the Notice of Default and a copy of the Notice of Sale, including the trustors, as provided
         by Section 107.080, Subsection 3, and Section 107.090, of the Nevada Revised Statutes, relating
         to the deed of trust shown as exception no. 42 of this guarantee are:


         Paul M. Jones
         P.O. Box 415
         McDermitt, NV 89421
         (Trustor, Vestee, Taxes and Item No. 43)

         Mary Lynn Jones
         P.O. Box 415
         McDermitt, NV 89421
         (Trustor, Vestee, Taxes and Item No. 43)

         Paul M. Jones
         1 Jordan Meadow Road
         McDermitt, NV 89421
         (Affects Item No. 43)

         Mary Lynn Jones
         1 Jordan Meadow Road
         McDermitt, NV 89421
         (Affects Item No. 43)

         Amadan Gold, LLC, a Nevada limited liability company
         c/o Jones Vargas
         Attn: Wayne Klomp
         100 W. Liberty St., 12th Fl.
         Reno, NV 89501
         (Affects Item No. 44)

         Paul M. Jones
         Washburn Creek Ranch
         1 Jordan Meadows Road
         McDermitt, NV 89421
         (Affects Item No. 44)

         Mary Lynn Jones
         Washburn Creek Ranch

1 Jordan Meadows Road
McDermitt, NV 89421
(Affects Item No. 44)

Humboldt County Treasurer's Office
No Return Mailing Address
(Affects Item No. 45)

Humboldt County Assessor
No Return Mailing Address
(Affects Item No. 3)

Pursuant to N.R.S. 107.095, it is required that notice be given to any guarantor, surety or obligor other than the trustor at the address of each such guarantor, surety or other obligor, if known; otherwise, to the address of the trust property.

4.    Attention is called to Soldiers' and Sailors' Civil Relief Act of 1940 and amendments thereto which contain inhibitions against the sale of land under a deed of trust if the owner is entitled to the benefits of said Act.

5.    Attention is called to the Federal Tax Lien Act of 1966 which, among other things, provides for the giving of written Notice of Sale in a specified manner to the Secretary of Treasury or his delegate as a requirement for the discharge or divestment of a federal tax lien in a non-judicial sale, and establishes with respect to such lien a right in the United States to redeem the property within a period of 120 days from the date of any such sale.

6.    According to the records of the county tax collector the property address is purported to be **No Address Shown, Winnemucca, NV**, and the assessor's parcel number is 003-091-02, 003-091-03, 003-101-03, 003-101-04, 003-101-05, 003-101-06, 003-101-07, 003-101-08, 003-101-09, 003-111-12, 003-111-16, 003-111-17, 003-111-19 and 003-201-02.  No assurance is afforded as to the accuracy of this address.

* * * * * * * * *

JY

# EXHIBIT 6

# EXHIBIT 6

HUMBOLDT COUNTY, NEVADA            12/03/2012 03:02 PM
MARY ANN HAMMOND, RECORDER              PAGE 1 of 8
PAID $221.00          First American Title Pase

    **2012 6195**

APN's: 003-091-02, 03
        003-101-03, 04, 05, 06, 07, 08, 09
        003-111-12, 16, 17, 19
        003-201-02

RECORDING REQUESTED BY
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV 89074

AND WHEN RECORDED MAIL TO
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV 89074

---

**Trustee Sale No. 2435818 - IRK**

Property Address: 11255 Jordan Meadow Drive
                  McDermitt, NV 89421

## IMPORTANT NOTICE

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right for a period of 35 days commencing on the first day following the day upon which the notice of default was recorded and mailed to make good the deficiency in performance or payment. No sale date may be set until three months from the date this notice of default was recorded (which date of recordation appears on this notice).

The amount due is **$918,135.00 as of 10/23/2012** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

**APN's:** 003-091-02, 03
003-101-03, 04, 05, 06, 07, 08, 09
003-111-12, 16, 17, 19
003-201-02

RECORDING REQUESTED BY
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV  89074

AND WHEN RECORDED MAIL TO
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV  89074

---

**Trustee Sale No.  2435818 - IRK**

Property Address:  11255 Jordan Meadow Drive
McDermitt, NV 89421

# IMPORTANT NOTICE

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right for a period of 35 days commencing on the first day following the day upon which the notice of default was recorded and mailed to make good the deficiency in performance or payment. No sale date may be set until three months from the date this notice of default was recorded (which date of recordation appears on this notice).

The amount due is **$918,135.00 as of 10/23/2012** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Trustee Sale No. 2435818-IRK

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**First American Title Insurance Company**
**2490 Paseo Verde Parkway, Suite 100**
**Henderson, NV 89074**
**Attn: Irene Kane**
**(702) 731-4131**

You may wish to consult a credit-counseling agency to assist you.  The Department of Housing and Urban Development (HUD) can provide you with the name and address of the local HUD approved counseling agency by calling their toll-free hotline at **(800) 569-4287** or you can go to The Department of Housing and Urban Development (HUD) website at **www.hud.gov/offices/hsg/sfh/hcc/hcs.com**.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**NOTICE IS HEREBY GIVEN THAT: FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation** is the duly appointed Trustee under a Deed of Trust dated **08/11/2009**, executed by **PAUL M. JONES and MARY LYNN JONES, husband and wife,** as trustor, to secure certain obligations in favor of **EDDIE MENTABERRY, a married man, as to an undivided 50% interest and GEORGE MENTABERRY, an unmarried man, as to an undivided 50% interest, as original Beneficiary** under a Deed of Trust Recorded on **09/14/2009** as **Instrument No. 2009-3523** of Official Records in the Office of the Recorder of Humboldt County, State of Nevada. Said obligations including **ONE NOTE FOR THE ORIGINAL SUM OF $900,000.00.**

Trustee Sale No. 2435818 - IRK

That a breach of the obligations for which said Deed of Trust is security has occurred in that payment has not been made of: **THE INSTALLMENTS OF PRINCIPAL AND INTEREST WHICH BECAME DUE 08/14/2012, TOGETHER WITH ANY AND ALL OTHER CHARGES AND AMOUNTS DUE AND PAYABLE PURSUANT TO SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES AND/OR TRUSTEE FEES.**

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration of Default and Demand for Sale, and has surrendered to said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Date:   December 3, 2012

First American Title Insurance Company, as Trustee for the Beneficiary.
Foreclosure Department
2490 Paseo Verde Parkway, Ste. 100
Henderson, NV 89074
(702) 731-4131

Russell M. Dalton, Vice President

STATE OF NEVADA        )
                       : ss
COUNTY OF CLARK   )

This instrument was acknowledged before me

on ___12/3/2012___

by: Russell M. Dalton, Vice President of First American Title Insurance Company

_____
Notary Public

C. JACKSON
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 99-55741-1
MY APPT. EXPIRES SEPT. 5, 2016

C. Jackson
#99-55741-1
Sept. 5, 2016

**Exhibit**
**NRS 107.080 Compliance Affidavit**
**Version 10/01/11 (issued 9/26/11)**

# AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE

APN's and Property Address:
003-091-02, 03
003-101-03, 04, 05, 06, 07, 08, 09
003-111-12, 16, 17, 19
003-201-02

11255 Jordan Meadow Drive
McDermitt, NV 89421

Deed of Trust Document Instrument
Number:
2009-3523

STATE OF NEVADA                )
                               )  ss:
COUNTY OF HUMBOLDT             )

The affiant, <u>ALICE JEAN MENTABERRY</u>, being first duly sworn upon oath, based on personal knowledge, and under penalty of perjury attests that I am the beneficiary or trustee, or the authorized representative of the beneficiary or trustee, of the deed of trust described in the notice of default and election to sell to which this affidavit is attached ("Deed of Trust").

I further attest, based on personal knowledge, and under penalty of perjury, to the following information, as required by NRS 107.080(2) (c):

1. The full name and business address of the trustee or the trustee's representative or assignee is:

First American Title Insurance Company,
a California Corporation
Full Name

2490 Paseo Verde Pkwy, #100
Henderson, NV 89074
Street, City, State, Zip

The full name and business address of the current holder of the note secured by the Deed of Trust is:

**FULL NAME**:
Eddie Mentaberry and Alice Jean Mentaberry, husband and wife as joint tenants with the right of survivorship as to an undivided 50% interest AND George B. Mentaberry and Tammy Pollock, or any successor Trustee, as Trustees if the George B. Mentaberry Trust dated July 19, 2010 as to an undivided 50% interest

**ADDRESS:**

| | |
|---|---|
| Eddie Mentaberry and Alice Jean Mentaberry | 4790 William Avenue Winnemucca, NV 89445 |
| George B. Mentaberry and Tammy Pollock, as Trustee | P.O. Box 627 Winnemucca, NV 89446 |

The full name and business address of the current beneficiary of record of the Deed of Trust is:

**FULL NAME:**
Eddie Mentaberry and Alice Jean Mentaberry, husband and wife as joint tenants with the right of survivorship as to an undivided 50% interest AND George B. Mentaberry and Tammy Pollock, or any successor Trustee, as Trustees if the George B. Mentaberry Trust dated July 19, 2010 as to an undivided 50% interest

**ADDRESS:**

| | |
|---|---|
| Eddie Mentaberry and Alice Jean Mentaberry | 4790 William Avenue Winnemucca, NV 89445 |
| George B. Mentaberry and Tammy Pollock, as Trustee | P.O. Box 627 Winnemucca, NV 89446 |

The full name and business address of the servicers of the obligation or debt secured by the Deed of Trust is:

| | |
|---|---|
| N/A | N/A |
| Full Name | Street, City, State, Zip |

2.  The full name and last known business address of the current and every prior known beneficiary of the Deed of Trust, is:

**FULL NAME:**

Eddie Mentaberry and Alice Jean Mentaberry, husband and wife as joint tenants with the right of survivorship as to an undivided 50% interest AND George B. Mentaberry and Tammy Pollock, or any successor Trustee, as Trustees if the George B. Mentaberry Trust dated July 19, 2010 as to an undivided 50% interest

**ADDRESS:**

| | |
|---|---|
| Eddie Mentaberry and Alice Jean Mentaberry | 4790 William Avenue Winnemucca, NV 89445 |
| George B. Mentaberry and Tammy Pollock, as Trustee | P.O. Box 627 Winnemucca, NV 89446 |

**FULL NAME:**

Eddie Mentaberry, a married man as to an undivided 50% interest & George Mentaberry, an unmarried man as to an undivided 50% interest

**ADDRESS:**

| | |
|---|---|
| Eddie Mentaberry | P.O Box 248 McDermitt, NV 89421 |
| George Mentaberry | P.O Box 248 McDermitt, NV 89421 |

The beneficiary, successor in interest of the beneficiary, or trustee of the Deed of Trust, has actual or constructive possession of the note secured by the Deed of Trust.

3. The trustee has the authority to exercise the power of sale under Chapter 107 of NRS with respect to the property encumbered by the Deed of Trust, pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the Deed of Trust.

4. The following is information regarding the amount in default, the principal amount secured by the Deed of Trust, a good faith estimate of fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale:

   a.  The amount of missed payments and interest in default is **$918,135.00.**
   b.  The amount of fees charged to the debtor in connection with the exercise of power of sale is **$0.00.**
   c.  The principal amount secured by the Deed of Trust is **$900,000.00.**
   d.  A good faith estimate of all fees imposed and to be imposed because of the default is **$4,635.00.**
   e.  A good faith estimate of the total costs and fees to be charged to the debtor in connection with the exercise of the power of sale is **$4,480.00.**

5. The following is information regarding the instrument(s) that conveyed the interest of each beneficiary:

| 08/12/2012 | 2010-4548 | Assignment of Deed of Trust and |
| Date | Document Instrument Number | Assignment of Rents |
| | | Name of Document Conveying Interest of Beneficiary |

| 08/03/2011 | 2011-4015 | Assignment of Deed of Trust and |
| Date | Document Instrument Number | Assignment of Rents and of Promissory Note |
| | | Name of Document Conveying Interest of Beneficiary |

7.  Following is the true and correct signature of the affiant:

Dated this __29th__ day of November, 2012.

Affiant Name: ALICE JEAN MENTABERRY

Signed By: *Alice Jean Mentaberry*

Print Name: *ALICE JEAN MENTABERRY*

STATE OF NEVADA          )
                         ) ss:
COUNTY OF HUMBOLDT       )

On this __29th__ day of November, 2012, personally appeared before me, a Notary Public, in and for said County and State, ALICE JEAN MENTABERRY, known to me to be the persons described in and who executed the foregoing instrument in the capacity set forth therein, who acknowledged to me that he/she executed the same freely and voluntarily and for the uses and purposes therein mentioned.

_____
NOTARY PUBLIC IN AND FOR
SAID COUNTY AND STATE

JOHN M. DOYLE
Notary Public - State of Nevada
Appointment Recorded in Humboldt County
No: 99-4930-9 - Expires August 18, 2015

*John M. Doyle*
*# 99-4930-9*
*Aug. 18, 2015*

# EXHIBIT 7

# EXHIBIT 7

HUMBOLDT COUNTY, NEVADA          03/25/2013 12:15 PM
MARY ANN HAMMOND, RECORDER           PAGE 1 of 1
PAID $14.00       First American Title Pase

          **2013  1419**

APN: 003-111-17
Requested By and When Recorded, Send to:
First American Title Ins. Co
2490 Paseo Verde Pkwy, 100
Henderson, NV 89074

# CERTIFICATE

## STATE OF NEVADA FORECLOSURE MEDIATION PROGRAM

Property Owner(s):

**Jones, Paul**
**Jones, Mary**

Trustee:

**First American Title Insurance Co**
**2490 Paseo Verde Pkwy, Suite 100**
**Henderson, NV 89074**

Property Address:

**11255 Jordan Meadow Rd**
**McDermitt, NV 89421**

**Humboldt Co.**
Instrument Number:
**20093523**

Deed of Trust Doc Number:
**2009-3523**

Book:          Page:

☐ **Mediation Waived:** The Beneficiary may proceed with the foreclosure process.

☒ **Non-Applicable Property:** The Beneficiary may proceed with the foreclosure process.

☐ **No Agreement:** A Foreclosure Mediation Conference was held on **N/A** . The parties were unable to agree to a resolution of this matter. The Beneficiary may proceed with the foreclosure process.

☐ **Relinquish the Property:** A Foreclosure Mediation Conference was held on **N/A** . The parties agreed homeowner would voluntarily relinquish the property. The mediation required by law has been completed in this matter. The Beneficiary may proceed with the foreclosure process.

☐ **Grantor Non-Compliance:** The Grantor or person who holds the title of record did not attend the Foreclosure Mediation Conference or failed to produce the necessary disclosure forms. The Beneficiary may proceed with the foreclosure process.

☐ **Certificate Reissuance:** The Beneficiary may proceed with the foreclosure process.

☐ **Court Ordered:** The Beneficiary may proceed with the foreclosure process.

NOD Date: 12-03-2012   Proof of Service Date: 12-13-2012

Certificate Issued Date: 02-13-2013

# FMP CERT: 2013-02-13-0003



# EXHIBIT 8

# EXHIBIT 8

HUMBOLDT COUNTY, NEVADA          03/25/2013 12:15 PM
MARY ANN HAMMOND, RECORDER          PAGE 1 of 4
PAID $17.00          First American Title Pase

 **2013 1420**

APN: 003-091-02, 03
003-101-03, 04, 05, 06, 07, 08, 09
003-111-12, 16, 17, 19
003-201-02

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV  89074

---

Trustee Sale No. 2435818-IRK

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/11/2009.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE
SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **May 8, 2013** at **3:00 P.M.** FIRST AMERICAN TITLE INSURANCE
COMPANY, a California Corporation as the duly appointed Trustee under and pursuant
to a Deed of Trust recorded on **08/14/2009**, as **Instrument No. 2009-3523** of official
records in the Office of the Recorder of Humboldt County, State of Nevada executed by:
**PAUL M. JONES AND MARY LYNN JONES, husband and wife,** as Trustor, **EDDIE
MENTABERRY, a married man, as to an undivided 50% interest and GEORGE
MENTABERRY, an unmarried man, as to an undivided 50% interest,** as original
Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER
FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a
cashier's check drawn by a state or national bank, a cashier's check drawn by state or
federal credit union or a cashier's check drawn by state or federal savings and loan
association, savings association, or savings bank) all right, title, and interest conveyed to
and now held by the Trustee in the hereinafter described property under and pursuant to
the Deed of Trust. The sale will be *made,* but without covenant or warranty expressed or
implied regarding title, possession, or encumbrances, to pay the remaining principal sum
of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and
expenses of the Trustee for the total amount (at the time of the initial publication of the
Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on
the day of sale.

APN: 003-091-02, 03
003-101-03, 04, 05, 06, 07, 08, 09
003-111-12, 16, 17, 19
003-201-02

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
First American Title Company
2490 Paseo Verde Parkway, Ste.100
Henderson, NV 89074

---

Trustee Sale No. 2435818-IRK

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/11/2009.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE
SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **May 8, 2013** at **3:00 P.M.** **FIRST AMERICAN TITLE INSURANCE
COMPANY**, a California Corporation as the duly appointed Trustee under and pursuant
to a Deed of Trust recorded on **08/14/2009**, as **Instrument No. 2009-3523** of official
records in the Office of the Recorder of Humboldt County, State of Nevada executed by:
**PAUL M. JONES AND MARY LYNN JONES, husband and wife,** as Trustor, **EDDIE
MENTABERRY, a married man, as to an undivided 50% interest and GEORGE
MENTABERRY, an unmarried man, as to an undivided 50% interest,** as original
Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER
FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a
cashier's check drawn by a state or national bank, a cashier's check drawn by state or
federal credit union or a cashier's check drawn by state or federal savings and loan
association, savings association, or savings bank) all right, title, and interest conveyed to
and now held by the Trustee in the hereinafter described property under and pursuant to
the Deed of Trust. The sale will be *made,* but without covenant or warranty expressed or
implied regarding title, possession, or encumbrances, to pay the remaining principal sum
of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and
expenses of the Trustee for the total amount (at the time of the initial publication of the
Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on
the day of sale.

Trustee Sale No. 2435818-IRK

Place of Sale; **At the front entrance to the Humboldt County Courthouse, 25 West 5ᵗʰ Street, Winnemucca, Nevada 89445.**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO FOR COMPLETE LEGAL DESCRIPTION.**

The street address is **11255 Jordan Meadows Drive, McDermitt, NV 89421**. Other common designation, if any, of the real property described above is purported to be: **APN's: 003-091-02, 03, 003-101-03, 04, 05, 06, 07, 08, 09, 003-111-12, 16, 17, 19, 003-201-02.**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, express or implied, regarding title, possession, encumbrances, condition, suitability for a particular purpose or the location or existence of any personal property, to satisfy the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fee, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to wit:

Amount of unpaid balance and other charges: **$965,000.00 (Estimated).**

Accrued interest and additional advances, if any, will increase this figure prior to sale. The beneficiary may elect to bid less than their full credit bid.

**The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.**

**THIS PROPERTY IS SOLD AS-IS, LENDER/BENEFICIARY IS UNABLE TO VALIDATE THE CONDITION, DEFECTS OR DISCLOSURE ISSUES OF SAID PROPERTY AND BUYER WAIVES THE DISCLOSURE REQUIREMENTS UNDER NRS 113.130 BY PURCHASING AT THIS SALE AND SIGNING RECEIPT.**

Trustee Sale No. 2435818-IRK

DATED: March 21, 2013

FIRST AMERICAN TITLE INSURANCE COMPANY
FORECLOSURE DEPARTMENT
2490 PASEO VERDE PARKWAY, STE. 100
HENDERSON, NV 89074
(702) 731-4131

_____
Russell M. Dalton, Vice President


STATE OF NEVADA    )
                                      : ss
COUNTY OF CLARK   )

IRENE KANE
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 99-36734-1
MY APPT. EXPIRES JUNE 7, 2015

This instrument was acknowledged before me
on_____3·22·2013_____
by: Russell M. Dalton, Vice President of First American
Title Insurance Company

*Irene Kane*
*#99-36734-1*
*Jun. 7, 2015*

_____
Notary Public

Trustee Sale No. 2435818-IRK

Exhibit "A"
Legal Description

TOWNSHIP 46 NORTH, RANGE 36 EAST, M.D.B.&M.

SECTION 6: S1/2 SE1/4
SECTION 7: ALL
SECTION 18: LOT 1; N1/2 NE1/4; NE1/4 NW1/4

TOWNSHIP 47 NORTH, RANGE 35 EAST, M.D.B.&M.

SECTION 3: LOT 3 OF THE NW1/4
SECTION 19: E1/2 NE1/4

TOWNSHIP 47 NORTH, RANGE 36 EAST, M.D.B.&M.

SECTION 23: SE1/4 SE1/4
SECTION 24: NE1/4 SW1/4; SW1/4 SW1/4; N1/2 SE1/4
SECTION 26: S1/2 NW1/4; NW1/4 NE1/4
SECTION 27: NE1/4 SE1/4; SW1/4 SE1/4
SECTION 34: NE1/4 NW1/4

TOWNSHIP 47 NORTH, RANGE 37 EAST, M.D.B.&M.

SECTION 10: N1/2 N1/2
SECTION 11: NW1/4 NW1/4
SECTION 14: NW1/4 SW1/4; SW1/4 NW1/4
SECTION 15: S1/2 NE1/4; S1/2 NW1/4; N1/2 SW1/4; N1/2 SE1/4
SECTION 16: N1/2 SE1/4; SW1/4 SE1/4; SE1/4 SW1/4; SW1/4 NE1/4; SE1/4 NE1/4
SECTION 19: S1/2 NE1/4; NW1/4 SE1/4; NE1/4 SW1/4; LOT 3 OF THE SW1/4
SECTION 20: SW1/4 NE1/4; SE1/4 NE1/4; NE1/4 SW1/4; NW1/4 SE1/4; S1/2 NW1/4
SECTION 24: NE1/4; E1/2 NW1/4

# EXHIBIT 9

# EXHIBIT 9

HUMBOLDT COUNTY RECORDER , NEVADA
MARY ANN HAMMOND, RECORDER
PAID $19.00        GUNDERSON LAW FIRM

02/14/2013 01:40:23PM
PAGE 1 OF 6

2013  787

APN#_____

**Recording Requested by:**
Name: Gunderson Law Firm
Address: 3895 Warren Way
City/State/Zip: Reno, NV 89509

**When Recorded Mail to:**
Name: Gunderson Law Firm
Address: 3895 Warren Way
City/State/Zip: Reno, NV 89509

**Mail Tax Statement to:**
Name: Gunderson Law Firm
Address: 3895 Warren Way
City/State/Zip: Reno, NV 89509

## DEFAULT JUDGMENT

This page added to provide additional information required by NRS 111.312 Sections 1-2.
(Additional recording fee applies.) This cover page must be typed or printed.

FILE?

2011 OCT 27 PM 4: 15

DIST. COURT CLERK

IN THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF HUMBOLDT

| | |
|---|---|
| MARY-LYNN P. JONES, an individual; and PAUL M. JONES, an individual, | Case No. CV17856 |
| Plaintiffs, | Dept. No. 2 |
| vs. | |
| LINDA DIXON, an individual; ELAFE, LLC, a Nevada limited liability company; COMMODIS CORPORATION, a Panamanian corporation; CORE INTERNATIONAL CAPITAL CORPORATION, a Panamanian corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |
| ELAFE, LLC, a Nevada limited liability company; COMMODIS CORPORATION, a British Virgin Islands international business company; | |
| Counterclaimants, | |
| vs. | |
| MARY-LYNN P. JONES, an individual; PAUL M. JONES, an individual, and RAYMOND E. BLUFF, an individual, and WILLOW CREEK PLACER GROUP, LLC, a Nevada Limited Liability Company, | |
| Counterdefendants. | |

**DEFAULT JUDGMENT**

An Application having been duly made by Counterclaimants ELAFE, LLC, a Nevada limited liability company ("Elafe") and COMMODIS CORPORATION, a Panamanian corporation

Description: Humboldt,NV Document-Year.DocID 2013.767 Page: 2 of 6
Order: fggf Comment:

HUMBOLDT COUNTY RECORDER, NEVADA    02/14/2013 01:40:23PM
MARY ANN HAMMOND, RECORDER    PAGE 3 OF 8

2013 787

1  ("Commodis") (collectively "Counterclaimants") for judgment against Counterdefendants MARY-

2  LYNN P. JONES, an individual, and PAUL M. JONES, an individual, (together "the Joneses" or

3  "Counterdefendants"), and the Default of the Joneses having been entered for failure to answer or

4  otherwise defend as to the Counterclaim of Counterclaimants, and it appearing that the Joneses is not

5  in the military service of the United States and is not an infant or incompetent person, and good

6  cause appearing therefor,

7     IT IS ORDERED that Counterclaimants recover of and from the Joneses, $520,500.00, plus

8  interest at the legal rate from August 17, 2009 until satisfied, as follows:

9     1.  Three hundred fifty thousand dollars ($350,000.00), plus interest at the legal rate from

10        August 17, 2009 until satisfied, in accordance with NRS 17.130, for money advanced to

11        the Joneses for the purchase of the chemical milling and metal recovery system and

12        wrongfully retained by the Joneses; and

13    2.  One hundred seventy thousand five hundred dollars ($170,500.00), plus interest at the

14        legal rate from August 17, 2009 until satisfied, in accordance with NRS 17.130, for

15        money advanced to the Joneses pursuant to the Mining Agreement and wrongfully and/or

16        expended by the Joneses.

17    IT IS SO ORDERED.

18    DATED this 27th day of October 2011.

19

20

21                                    By: _____
                                          The Honorable Michael R. Montero
22                                        District Court Judge

23  Submitted by:
    GUNDERSON LAW FIRM
24

25  _____
    Mark H. Gunderson, Esq.
26  Nevada State Bar No. 2134
    Austin K. Sweet, Esq.
27  Nevada State Bar No. 11725
28  Attorneys for Defendants Linda Dixon, Elafe, LLC,
    Commodis Corporation, and Core International Capital Corporation

2

http://fast.firstam.net/smsfast/imaging_WB/pub/pages/preview.html?Repository=imaging.f...    3/15/2013

HUMBOLDT COUNTY RECORDER, NEVADA
MARY ANN HAMMOND, RECORDER
02/14/2013 01:40:23PM
PAGE 4 OF 6

2013 787

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Honorable Michael R. Montero, District Court Judge, Sixth Judicial District Court and am not a party to, nor interested in, this action; and that on October 27, 2011, I caused to be served a true and correct copy of the enclosed **DEFAULT JUDGMENT** upon the following parties:

Mark H. Gunderson, Esq.
Gunderson Law Firm
3895 Warren Way
Reno, NV 89509
*Via US Mail*

Mary-Lynn and Paul Jones
P.O. Box 415
McDermitt, NV 89421
*Via US Mail*

Paige Brown
Judicial Assistant
Sixth Judicial District Court, Dept. II

CERTIFIED COPY
The document to which this certificate is attached is a full, true and correct copy of the original on file and of record in my office.
DATE: 2-8-2013
Tami Rae Spero, County Clerk and Clerk of the Sixth Judicial District Court, in and for The County of Humboldt, State of Nevada.
By_____, Deputy
Per NRS 239.sec. 6 the SSN may be redacted, but in no way affects the legality of the document.

Sixth Judicial
District Court

Description: Humboldt,NV Document-Year.DocID 2013.767 Page: 4 of 6
Order: fggf Comment:

HUMBOLDT COUNTY RECORDER, NEVADA
MARY ENE MARMOND, RECORDER
02/14/2013 01:46:23PM
PAGE 5 OF 6

2013  767

## DECLARATION OF JUDGMENT OF AUSTIN K. SWEET, ESQ.

1    I, Austin K. Sweet, do hereby swear under penalty of perjury that the following assertions are

2    true:

3    1.    I am at least 18 years of age and I am counsel of record for ELAFE, LLC ("Elafe"),

4    and COMMODIS CORPORATION ("Commodis") (together, "Judgment Creditors").

5    2.    The Judgment Creditors obtained a judgment in their favor against MARY-LYNN P.

6    JONES and PAUL M. JONES (together, "Judgment Debtors"). The Judgment Debtors' last known

7    address is P.O. Box 415, McDermitt, Nevada, 89421.

8    3.    The last four digits of Mary-Lynn Jones's social security number are 4951.

9    4.    The last four digits of Paul Jones's social security number are 3044.

10    5.    The assessor's parcel numbers and addresses of the real property owned by the

11    Judgment Debtors in Humboldt County, Nevada, are:

12         a.  003-091-02 – No physical address

13         b.  003-091-03 – No physical address

14         c.  003-101-03 – No physical address

15         d.  003-101-05 – No physical address

16         e.  003-101-06 – No physical address

17         f.  003-101-07 – No physical address

18         g.  003-101-08 – No physical address

19         h.  003-101-09 – No physical address

20         i.  003-111-12 – No physical address

21         j.  003-111-16 – No physical address

22         k.  003-111-17 – 11255 Jordan Meadow Road

23         l.  003-111-19 – No physical address

24         m. 003-201-02 – No physical address

25    I have confirmed that the Judgment Debtors are the legal owners of the above listed property.

26    ///

27    ///

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 WARREN WAY
RENO, NEVADA 89509
(775) 829-1222

1

Description: Humboldt,NV Document-Year.DocID 2013.767 Page: 5 of 6
Order: fggf Comment:

Page: 30

HUMBOLDT COUNTY RECORDER, NEVADA          02/14/2013 01:49:23pm
MARY ANN HAMMOND, RECORDER                       PAGE 6 OF 6

                                                  2013  767

6.    The judgment was entered in the Sixth Judicial District Court of the State of Nevada, in and for the County of Humboldt, in Case No. CV171856, on October 27, 2011, in the amount of $520,500.00, plus legal interest beginning August 17, 2009.

7.    No payment from any source has been made to satisfy the judgment.

8.    As of February 11, 2013, statutory interest owed on the judgment is $95,379.84. Statutory interest continues to accrue at $74.87 per day.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

DATED this 13 day of February, 2013.

AUSTIN K. SWEET

GUNDERSON LAW FIRM
A PROFESSIONAL
LAW CORPORATION
3895 Warren Way
RENO, NEVADA 89509

2

Description: Humboldt,NV Document-Year.DocID 2013.767 Page: 6 of 6
Order: fggf Comment: